Thompson vs. Johnston Bros. Co.

THOMPSON, Administratrix, Respondent, vs. JOHNSTON BROS. Co., Appellant.

*November 30 — December 29, 1893.*

*Master and servant: Death of servant caused by defective appliances: Assumption of risk by infant: Evidence: Instructions: Improper remarks of counsel: Damages.*

1. The evidence in this case (showing, among other things, that the steel cable by which defendant's freight elevator was raised and lowered, and the drum on which the cable was wound, were near the edge of the elevator platform as it passed up and down and were unguarded, in violation of ch. 549, Laws of 1887; that the check lines by which the elevator was managed were so near to the cable that the person running the elevator might by mistake or inadvertence take hold of the cable instead of such lines, and, if he did so near the drum, would be in danger of having his hand or fingers taken off; and that plaintiff's intestate. a boy sixteen years old, who had been employed four days before to run the elevator, was found dead, jammed between the platform and the ceiling at the side of a hatchway, with his head near the cable, his arms outstretched, and two fingers torn off) is *held* to sustain special findings by the jury to the effect that the elevator was not a reasonably safe appliance, as respected the person employed to operate it; that its unsafe condition was the proximate cause of the intestate's death; that he was not of sufficient age and experience to comprehend the danger, and was not guilty of negligence; that he accidentally seized the cable instead of one of the check lines, before he fell upon the platform, and his hand was thereby drawn into the drum; and that defendant was negligent in permitting or causing the elevator to be used in its dangerous condition.

Thompson vs. Johnston Bros. Co.

2. Upon the evidence, it could not be held as a matter of law that the boy assumed the risk of any danger from the proximity of the drum and cable.

3. It was not a material error to permit an expert to testify that the drum should have been covered, since the statute so required.

4. The refusal to give instructions which were substantially embraced in the general charge is not error.

5. A judgment for plaintiff will not be reversed because of a statement by counsel that they could show that another man was caught in the drum, all evidence offered to show such an occurrence having been excluded.

6. In an action to recover damages for the death of a boy sixteen years old, evidence as to the pecuniary circumstances of his mother, a widow, and the number of her children, was admissible; and the jury in such case might take into account her reasonable expectation of pecuniary benefit from the continuance of his life, even beyond his majority.

7. An award of $1,700 in such a case is *held* not excessive.

APPEAL from the Circuit Court for *Milwaukee* County.

The defendant was, at the times hereinafter mentioned, and now is, a corporation organized under the laws of this state, engaged in carrying on the steam bakery and candy manufacturing business in Milwaukee. In the building in which the defendant transacted such business there was a steam freight elevator operated by the defendant. On March 21, 1890, the plaintiff's intestate, while in the employ of the defendant in running and operating said elevator, was killed. On March 1, 1892, the plaintiff was appointed administratrix of his estate, and thereupon this action was commenced, on the alleged ground that the said intestate was killed by the wrongful act, neglect, and default of the defendant. The defendant answered by way of admissions and denials, and alleged contributory negligence or carelessness on the part of said deceased.

At the close of the trial the jury returned a special verdict, to the effect (1) that the freight-elevator of the defendant, upon which said intestate lost his life, was not a

reasonably safe appliance, as respected the person em-
ployed to operate it; (2) that the unsafe condition of said
elevator was the proximate cause of the intestate's death;
(3) that the intestate was not of sufficient age and expe-
rience to comprehend the danger of operating said elevator;
(4) that the intestate was not guilty of any negligence or
want of ordinary care in the operating of said elevator
which proximately caused, or contributed to cause, his
death; (5) that the boy did not try to shut the elevator
door with his foot, nor did he, while so doing, lose his bal-
ance and fall partly from the east side of the elevator plat-
form, and so get caught between the platform and the
floor before he could extricate himself; (6) that said intes-
tate did accidentally seize the cable by which the elevator
was moved up and down, before he fell upon the platform,
instead of one of the "check lines," so called, and his hand
was thereby drawn into the drum around which said cable
was coiled; (7) that the defendant was guilty of negligence
in permitting said elevator, or causing the same, to be used
in its business without alteration in the respect in which
the same was dangerous to the person operating it; (8) that,
if the court should be of the opinion that the plaintiff was
entitled to judgment, then they assessed her damages, in
reference to the pecuniary injury to her from her son's
death, at $1,700.

Judgment was rendered and entered upon said verdict in
favor of the plaintiff, from which the defendant appeals.

For the appellant there was a brief by *Winkler, Flan-
ders, Smith, Bottum & Vilas,* and oral argument by *E. P.
Vilas.*

For the respondent there was a brief by *Toohey, Doerfler
& Gilmore,* and oral argument by *John Toohey.*

CASSODAY, J. In his charge to the jury, the learned trial
judge gives a description of the elevator in the following

language: " As to the nature of this freight elevator, and
as to its construction and the method of its·management,
there is no diversity of evidence.   There is some little un-
certainty as to some points, probably because the elevator
has been burned up, and nobody remembers with accuracy
in the matter of distances,— inches, feet, and the like; but
the general features of the machine are before us upon un-
contradicted evidence.   It was a freight elevator, run by
steam.   It was used for carrying goods from the basement
to the fourth story of the factory, not counting the base-
ment as one story.   It consisted of a platform six feet by
five feet ten inches.   It passed up and down through what
I may call 'hatchways,'—that is, openings in the several
floors through which it passed.   It was lifted and lowered
by means of a cable, which ran over a 'sheave,' as it is
called, above the top of the elevator, and which was taken
in and paid out by a drum situated between the first and
second floors, not counting the basement, and attached to
the ceiling of the first floor, suspended below that ceiling
a short distance, and a short distance away from where the
elevator passed up and down; the exact distance we are
not advised of.   Various witnesses have made various esti-
mates of the distance, and you must judge as well as you
can of the distance of that drum from the nearest edge of
the platform as it passed by it, going up or down.   That
elevator was managed by means of two check ropes or check
lines, which were situated in the northeast corner of the
elevator,— on the north side, and near the east side.   Near
those two check ropes passed up the cable by which the
elevator was lifted and lowered.   It did not pass through
the floor of the elevator, but passed just outside of the
floor.   According to some of the witnesses, a notch or par-
tial opening was made in the side of the hatchway to make
room for this cable as it played up and down.   Precisely
how near it was to the check lines, the evidence is not en-

tirely agreed. Some of the witnesses placed the lines within about six inches of each other, and said that they were in a line one with the other. Another witness, however, said — and it must, in the nature of things, be true — that they were not exactly in line; that the check lines were a little south of the cable. This, I say, must have been true as to a portion of the space traversed by the elevator, because the cable, after passing through the second floor above the basement, coming down, was not continued down into the basement, but was carried off to the spool or drum and wound around it. On the east side of the elevator there was a door between the first and second floors, which was situated, according to the evidence, from one foot to sixteen inches beyond the space traversed by the platform, and east of it, that space being floored over at the bottom and ceiled over at the top. How it was on the other side, we are not advised, and it is immaterial."

It appears that the drum mentioned was iron, and about twenty-two inches in diameter; that it was suspended by iron braces on the north side of the elevator, and ran east and west, parallel with it; that it was from five to eighteen inches out from the edge of the floor of the elevator as it passed by in going up and down; that as the elevator went up the drum took in the cable on the side towards the elevator by turning downward; that the cable was a steel cord, an inch or more in diameter, and as it was so taken up by the drum each coil would run into a spiral groove or crevice on the side of the drum towards the elevator, and beneath it; that between such spiral grooves or crevices there was a raised space of about a half inch; that the cable and drum were both open and exposed to the view and reach of the operator between the floors mentioned in the opinion; that as the elevator moved downward the drum turned the other way — that is, upward — and let out the cable; that

the two check lines by which the elevator was manipulated were each five eighths of an inch in diameter, and on the side of the elevator towards the drum; that they were from six to nine inches from each other, and from two to six inches from the edge of the platform; and that the cable was from six to eighteen inches from the nearest check line.

It is conceded that, at the time he was killed, the plaintiff's intestate was a boy sixteen years of age. In regard to his death, the trial judge, in charging the jury, said: "There was nobody who saw this boy hurt or killed; nobody who saw him from the time he started up from the basement, or down from the top of the building, whichever it may have been, until after he was dead. . . . You will remember that he cried out twice. There is a difference in the evidence as to his first cry,— whether it was articulate or not. As to the second cry, all the witnesses agree that he cried out, 'For Christ's sake, stop the elevator!' All agree that he was found jammed up against the ceiling over the space east of the elevator shaft or platform. All agree that his head was towards the north, near the cables. All agree that one of his hands, at least, if not both of them, was outstretched, and that one of his legs was hanging over the east side of the elevator, and that the other was gathered up under him. All agree to the fact that two of his fingers were gone, and that one of those fragments was afterwards found upon the floor of the elevator, or the platform of the elevator."

The boy was killed on Friday. He had commenced running the elevator, as a business, the Monday previous. He had occasionally, as a volunteer, run that elevator before, and also one belonging to another party. There is no claim that the defendant or any one gave him any special instruction as to the running of the elevator or any danger connected with it. All agree that the cable and drum

were unguarded and but a short distance from the edge of the platform of the elevator as it passed up and down.

Such is a general outline of the facts and circumstances presented by the record. Without going into details, but after a careful examination of the testimony, we are constrained to hold that the evidence is sufficient to support the several findings of the jury, and hence that the trial court properly refused to direct a verdict in favor of the defendant. In view of the evidence, we cannot hold that the boy assumed the risk of any danger from the proximity of the drum and cable. The jury found that the elevator was not a reasonably safe appliance, as respected the person employed to operate it; that the defendant was guilty of negligence in permitting or causing the elevator to be used in its then dangerous condition; and that the boy was not of sufficient age and experience to comprehend the danger of operating the elevator. The statute in force then, as now, declares that "all belting, shafting, gearing, hoists, fly-wheels, elevators and drums of manufacturing establishments, so located as to be dangerous to employees when engaged in their ordinary duties, shall be securely guarded or fenced so as to be safe to persons employed in any such place of employment." Ch. 549, Laws of 1887; sec. 1636f, S. & B. Ann. Stats. With the check lines so near the cable, and the cable and drum so near the elevator, it is very obvious that the boy might, through mistake or inadvertence, take hold of the cable instead of the check lines; and if he did so at or near the drum then it is very manifest that he was in peril of having his fingers or hand taken off. The jury found that the boy did accidentally so seize the cable instead of the check line, before he fell upon the platform, and that his hand was thereby drawn into the drum and his fingers taken off. It is certain that two of his fingers were taken off, and one of them was afterwards found upon the platform of the elevator. The

facts are somewhat similar to those in *Chopin v. Badger P. Co.* 83 Wis. 192, and *Nadau v. White R. L. Co.* 76 Wis. 120.

Exception was taken because a manufacturer of elevators was allowed to testify, as an expert, to the effect that when the drum is located close to the operator as he passes up and down, then it naturally ought to be covered, and that he would have covered this one. The objection is that it was not a subject of expert testimony, but a question of fact for the jury. Assuming that such testimony might, under other circumstances, be objectionable upon the ground stated, yet in the case at bar it merely asserted what the statute quoted imperatively required the defendant to do, and hence could not have been prejudicial to the defendant. This is made imperative by another statute, which declares that no judgment shall be reversed by reason of any error which does " not affect the substantial rights of the adverse party." Sec. 2829, R. S.; *Olson v. Solveson*, 71 Wis. 663. We must hold that the error, if any, was immaterial.

The jury found that the unsafe condition of the elevator was the proximate cause of the boy's death. True, no one saw the accident. But the jury were justified in reaching such a conclusion from the facts and circumstances stated. In commenting upon the two theories advanced at the trial, the presiding judge well said: "Where evidence is purely circumstantial, the only correct theory is one which will take in all the known circumstances,— all the known facts. A theory, however well it may fit into a portion of the facts, is worthless, unless it will account for all the facts." The case, in some respects, is similar to *Hoye v. C. & N. W. R. Co.* 62 Wis. 666, 67 Wis. 1,— where there was an absence of any direct testimony as to how the woman came to be under the car where she was found.

Error is assigned because the court refused to instruct

Thompson vs. Johnston Bros. Co.

the jury that: "It is not enough that the plaintiff shows. an act which you may find to be a negligent act, and which might or might not have been the proximate cause of his death; but the plaintiff must satisfy you, by preponderance of the weight of evidence, that such negligent act, if you find it to exist, was the cause of the accident which caused his death." As indicated, the court left it to the jury to say, in answer to the first question, whether the elevator was safe or unsafe; and in answer to the second question, if they found it to be unsafe, then whether such condition was the proximate cause of the boy's death. In that connection the court charged the jury that: "It is utterly immaterial whether the elevator was safe or not, if the plaintiff's intestate did not lose his life by reason of its unsafe condition." These portions of the charge covered all contained in the instruction requested, except as to the "preponderance of the weight of evidence." The court further charged the jury, upon this branch of the case, that: "As to the *first three questions* which I have read to you, *the burden of proof is upon the plaintiff. It is for her to show* that the elevator was dangerous, *and that by reason of its dangerous condition her son came to his death*, and that he was of such age and such want of experience as precluded his comprehension of the danger of the work about which he was employed. As to these three items, *the burden of proof is upon the plaintiff*." Thus it appears that the court, did charge the jury substantially as requested.

Error is assigned because the court refused to instruct the jury that: "You are instructed that you are not at liberty to presume negligence on the part of the defendant in this action. Negligence must be proven, and in this case the burden of proof is upon the plaintiff to show that the defendant did, or omitted to do, some act or thing, the omission or commission of which directly contributed to the happening of this accident." It appears from what has

Thompson vs. Johnston Bros. Co.

already been said that the court did charge the jury substantially as here requested.

During the examination of one of the plaintiff's witnesses, he testified to the effect that there was no covering to the drum. Thereupon the following took place: *Defendant's counsel:* Wait a minute. That is objected to. *The court:* I shall leave that to the jury,— whether the drum was dangerous. *Plaintiff's counsel: We can show that there was another man caught in it, if they insist upon that.* (Objected to by defendant. The objection was overruled, and defendant's counsel excepted.) *Q.* Will you state whether or not that drum was covered? (Objected to by the defendant. The objection was overruled, and the defendant duly excepted.) *A.* That drum was not covered." There can be no doubt about the right of the plaintiff to prove the condition of the drum at the time. It is now contended that such rulings of the court expressly sanctioned the statement of the plaintiff's counsel quoted above and in *italics.* We do not so understand the record. Such rulings of the court were manifestly confined to the admission of testimony respecting the condition of the drum. The testimony given and offered to be given in that connection all related to the condition of the drum. Subsequently, the plaintiff's counsel sought to prove by another witness that while he was operating the same elevator his arm was caught by the same drum and injured, and that the witness thereupon refused to longer operate the elevator unless the defendant would cover the drum so as to make it safe, and that thereupon the defendant covered the drum. Such offers were, however, all excluded. For reasons which this court has repeatedly given, we cannot reverse the judgment on any such ground. *Laue v. Madison, ante,* p. 453, and cases there cited.

Error is assigned because the court allowed the plaintiff, a widow and the mother of the boy, to testify to the effect

Thompson vs. Johnston Bros. Co.

that she had had six children, but had only four then; that there was a mortgage of four or five hundred dollars on her homestead; and that her taxes thereon generally were $65, but that year $78. The right of action was, of course, given by statute. R. S. sec. 4255. The statute authorized the jury to "give such damages, not exceeding $5,000, as they" should "deem fair and just in reference to the pecuniary injury resulting from such death," to the plaintiff. Sec. 4256. The court charged the jury to the effect that the plaintiff would have been entitled to the boy's wages had he lived, until he became twenty-one, and no exception is taken to it. The court properly charged the jury to the effect that she could recover nothing additional unless they found, in view of her pecuniary circumstances, that she might have become dependent upon the son after his majority, and then only for the loss of support to which she might so have become entitled. The admission of such evidence and such charge are justified by the repeated decisions of this court. *Potter v. C. & N. W. R. Co.* 21 Wis. 375, 22 Wis. 615; *Ewen v. C. & N. W. R. Co.* 38 Wis. 622; *Johnson v. C. & N. W. R. Co.* 64 Wis. 425; *Tuteur v. C. & N. W. R. Co.* 77 Wis. 505; *Wiltse v. Tilden*, 77 Wis. 152. There can be no doubt that in such a case the jury may take into account the reasonable expectation of pecuniary benefit from the continuance of the life, even beyond his majority. *Ibid.* That depended upon her pecuniary circumstances, and the evidence admitted related directly to such circumstances. We cannot say that the damages found are excessive.

There are numerous other exceptions to the charge and the rulings of the court, all of which have received the careful consideration of this court, but it is believed that there is no reversible error in the record. We regard the charge of the court very full and fair throughout.

*By the Court.*— The judgment of the circuit court is affirmed.