Johnson, Administrator, etc., Respondent, vs. The Chicago & Northwestern Railway Company, Appellant.

*October 19 — November 3, 1885.*

*Railroads: Negligence: Court and jury: Killing of child at street crossing: Flagman: Damages: Evidence.*

1. Upon the evidence in this case it is *held* that the question whether the engineer or fireman on defendant's locomotive could have seen plaintiff's intestate (a boy about seven years old, who was run over and killed by such locomotive at or near a street crossing) so as to have known of his danger before the accident, and the questions of contributory negligence on the part of the deceased or his father, were properly submitted to the jury. [Whether the question of defendant's negligence in not keeping a watchman or flagman at such crossing, should have been submitted to the jury, not determined.]

2. An error in submitting a question to the jury for a special finding is immaterial if the findings upon the questions properly submitted sustain the judgment.

3. Upon the question of damages for the negligent killing of a child, evidence that the parents are poor, in bad health, and obliged to work for a living is admissible; and in such a case the jury may take into account the reasonable expectation of pecuniary benefit from the continuance of the life even beyond minority.

4. A verdict for $2,500 for the killing of a boy about seven years old, is *held* not so excessive as to warrant the interference of this court.

APPEAL from the Circuit County for *Winnebago* County. The case is thus stated by Mr. Justice CASSODAY:

"This action is for damages by reason of the death of the intestate, the plaintiff's son, a lad of nearly seven years, who was run over and killed by a switch-engine in a street crossing in Fort Howard. On the first trial the plaintiff was nonsuited and the judgment was reversed on appeal. 49 Wis. 529. The same occurred on the second trial, and the facts are fully stated in 56 Wis. 274.

"On the last trial, the jury returned a special verdict to the effect (1) that the defendant or its employees were guilty of carelessness which caused the death of the intestate; (2) that such negligence was by the defendant not having a flagman or watchman; (3) that the deceased got upon the rear foot-board of the locomotive and rode there to the place where the accident occurred, without the knowledge of any employee of the defendant of his being there; (4) that the deceased and Henry Bitters did not jump from the rear foot-board of the locomotive after the train commenced to move backward, and while in motion, immediately preceding the accident; (5) that the deceased met his death from attempting to cross the track before the moving locomotive; (6) that his presence at the rear of the locomotive was unknown to either the engineer or fireman before the accident; (7) that either the engineer or fireman, in the exercise of ordinary care, could have seen the deceased from their posts of duty, so as to have known of his danger before the accident; (8) that the deceased was not guilty of any want of ordinary care which directly contributed to his death; (9) that the deceased's father was not guilty of contributory negligence; (10) that the defendant was guilty of negligence in not having some one stationed at the crossing to look; (11) that the pecuniary loss which the father of the deceased boy had sustained by reason of his death was $2,500.

"From the judgment entered upon the verdict the defendant appeals."

For the appellant there was a brief by *Jenkins, Winkler & Smith*, of counsel, and oral argument by *C. H. Van Alstine*. They contended, *inter alia*, that, upon the evidence, the defendant's servants were not guilty of any negligence. Nor was there any negligence in not having a watchman or flagman stationed at the crossing in question. *Houghkirk v. Del. & H. Canal Co.* 92 N. Y. 219; *Haas v. G. R. & T. R. Co.* 47 Mich. 406; *Penn. R. Co. v. Matthews*, 36 N. J. Law, 534–5; *Telfer v. Northern R. Co.* 30 id. 188, 194; *Phil. & R. R. Co. v. Killips*, 88 Pa. St. 412; *Bilbee v. L., B. & S. C. R. Co.* 18 C. B. (N. S.), 584; *Stubley v. L. & N. W. R. Co.* L. R. 1 Exch. 13; *Cliff v. Midland R. Co.* L. R. 5 Q. B. 258; *State v. P., W. & B. R. Co.* 47 Md. 76; *Comm. v. B. & W. R. Co.* 101 Mass. 201; *Welsch v. St. Jos. R. Co.* 72 Mo. 451. The case of *Kinney v. Crocker*, 18 Wis. 74, if not distinguishable, is at variance with the whole current of authority. The deceased was guilty of contributory negligence, as a matter of law, in attempting to cross over the track in front of the moving engine. *Wendell v. N. Y. C. & H. R. R. Co.* 91 N. Y. 420; *Honegsberger v. Second Ave. R. Co.* 1 Keyes, 570. And the father was guilty of contributory negligence in knowingly allowing his child to go unattended by any person of suitable age and discretion in a direction which did not lead to his home, and which he knew did lead in the direction of danger. *Fitzgerald v. St. P., M. & M. R. Co.* 29 Minn. 336; *Cauley v. P., C. & St. L. R. Co.* 95 Pa. St. 398; *Mason v. M. P. R. Co.* 27 Kan. 84; *Hassenyer v. M. C. R. Co.* 48 Mich. 205; *Toledo, W. & W. R. Co. v. Grable*, 88 Ill. 441; *Albertson v. K. & D. M. R. Co.* 48 Iowa, 292; *Callahan v. Bean*, 9 Allen, 401; *Gibbons v. Williams*, 135 Mass. 333. It was error to charge the jury that they might take into consideration on the question of damages the probability of any aid the deceased might be to his parents after arriving at the age of twenty-one years. *Penn. Co. v. Lilly*, 73 Ind. 252; *St. Louis, I. M. & S. R. Co.*

Johnson, Adm'r, etc. vs. The Chicago & Northwestern R. Co.

*v. Freeman*, 36 Ark. 41; *Caldwell v. Brown*, 53 Pa. St. 454; *Lehigh Iron Co. v. Rupp*, 100 id. 95; *Ruins v. St. L., I. M. & S. R. Co.* 71 Mo. 164; *State v. B. & O. R. Co.* 24 Md. 84, 107; *Seaman v. Farmers' L. & T. Co.* 15 Wis. 578. The damages awarded were excessive. *Telfer v. Northern R. Co.* 30 N. J. Law, 210.

For the respondent there were briefs by *Tracy & Bailey*, and oral argument by *Mr. Tracy*. To the point that the question of the necessity of a flagman is one for the jury in any particular case, they cited Shearm. & Redf. on Negligence, sec. 483; *Eaton v. Erie R. Co.* 51 N. Y. 544; *Linfield v. O. C. R. Corp.* 10 Cush. 562; *Bradley v. B. & M. R. Co.* 2 id. 539; *Shaw v. B. & W. R. Co.* 8 Gray, 45; *Johnson v. C. & N. W. R. Co.* 1 Am. & Eng. R. Cas. 155–157; *Kinney v. Crocker*, 18 Wis. 75–82.

CASSODAY, J. At the place of the injury the defendant's railway track runs in a northeasterly and southwesterly direction. Second avenue runs directly south from the track, and there is a bridge in it near the track. From the north end of Second avenue, Third avenue runs in a northeasterly direction, and Fifth street in a northwesterly direction. Some seventy-two or eighty feet northeasterly from the middle of the highway there is a switch. On the afternoon in question the engine went northeasterly on the main track; and then the forward end of it was attached to twenty freight cars, and then backed southwesterly towards the crossing in question, drawing the twenty cars after it until near the switch, when the engine was uncoupled from the twenty cars, leaving them upon the main track, and the engine was moved southwesterly of the switch, and then back upon the side track, and the front end thereof coupled to "two or three box cars," and with them it backed down upon the main track, and then, on the switch being turned, pushed the "two or three box cars" northeasterly on the

main track until they reached the twenty freight cars, where they were coupled onto them, and then the whole train was started southwesterly until the last freight car passed the switch, when it stopped. About that time the deceased and his playmate, Bitters, were seen hanging upon the side of one of the box cars, and were driven off, and they went down under the bridge, but when the switch was turned and the train being pushed back upon the side track, the boys came up from under the bridge and got upon the footboard at the hind end of the tender attached to the engine, and continued to ride there until the twenty freight cars were pushed back far enough on the side track to enable trains to pass in safety on the main track, when it stopped. The twenty freight cars were then detached from the box cars.

There is evidence tending to show that while the engine was still moving, and just before it stopped, the deceased and Bitters dropped off the foot-board, upon the ground between the rails of the track, near the middle of the street, or west edge of the sidewalk on the east side of the street, and there remained playing for a little while, until after the engine had started back southwesterly, when they looked up and saw it coming, and then went off the track — the Bitters boy going off on the one side, and the deceased on the other side, but, on seeing the Bitters boy on the opposite side of the track, he turned and started to go across the track towards him, when he was caught before he could get over, and killed.

It is strenuously urged that the evidence conclusively shows that both of the boys either remained on the foot-board until after the engine started back, or else that they remained between the rails, and so near the rear end of the tank that it was impossible for either the engineer or fireman to see either of them upon looking in that direction from their post of duty, before or after starting back. Upon this assumption it is claimed that the seventh finding

is contrary to the undisputed evidence, and hence that the court should have directed a verdict for the defendant. To establish this claim we are asked, as a matter of law, to wholly disregard the testimony of the only witness as to the distance of the switch from the middle of the street, because the scale of the map indicates that it is eight feet less. We are also asked to hold, as a matter of law, that the boys got off at the edge of the sidewalk, when there is some evidence that they got off near the middle, or within three or four feet of the middle, of the street. We are asked to hold, as a matter of law, that there were three box cars attached to the engine, when one of the defendant's witnesses, the engineer, testified that there were "*two or* three." We are asked to hold, as a matter of law, that the engine only continued to push the cars back upon the side track "until there was one car and about a half, or at least thirty feet, between the engine and the switch," when the testimony upon which it is claimed is very indefinite and uncertain, and is as follows: "When we pushed them ahead on the side track the engine didn't go on the side track. It went, *may be*, within thirty feet of the switch,— the length of a rail. I *think* we had only *three* cars between the engine and the switch. *May be* there was one or one and a half of those cars; *somewhere along there.*"

To render this uncertainty more uncertain we may note the fact that the same witness had just before testified that they went on the side track and "got *two or* three box cars."* The defendant's engineer testified in effect that these box cars were from twenty-four to thirty feet long; that the engine and tender were twenty-five long; that the engine might have moved back fifteen or twenty feet before the alarm was given by the woman; that he did not think it was much over twenty feet; that he could not exactly say; that when he heard the alarm, he stopped as quick as possible and within a space of eight feet; that he then found the

Johnson, Adm'r, etc. vs. The Chicago & Northwestern R. Co.

boy forward of the forward driving wheel about on the crossing. Both he and the fireman testified that they both looked before starting back and saw no one, and that they could have seen the boys, had they not been within twelve or fifteen feet of the tender before it started back.

There may have been a preponderance of evidence in favor of the defendant's theory, but we cannot say it is conclusively established as a matter of law upon such evidence. The question whether the engineer or fireman might have seen the boys, had they kept a lookout before starting and in the direction of the moving engine, was one of fact for the jury and not of law for the court, upon principles repeatedly held by this court, including the decision of this case upon the former appeal.

Upon the same principles the questions of contributory negligence were properly submitted to the jury.

It is urged that it was error to submit to the jury the question whether, under the facts and circumstances disclosed in the evidence, the defendant was guilty of negligence in not having a flagman or watchman at the crossing, and several of the cases cited sustain this position. It is, however, unnecessary to determine the question here; for, assuming that the law is as claimed, and that the second and tenth findings of the jury should be set aside for such error, yet the balance of the findings sustain the judgment, and hence the error is immaterial.

The last point urged by appellant's counsel is that the damages are excessive. Were we sitting as jurors we should be inclined to agree with him and make them considerably less. But sitting as a court for the correction of errors we cannot say, as a matter of law, that the damages are so excessive as to create the belief that the jury were misled either by passion, prejudice, or ignorance, and hence we are not authorized to interfere. It appeared in evidence that the father of the deceased is a poor man and has been

troubled with the rheumatism ever since he was quite young, and saws wood for a living, and that the mother at times works out away from home. This evidence was objected to, but seems to be admissible within the rulings of this and other courts. *Potter v. C. & N. W. R. Co.* 21 Wis. 375; *S. C.* 22 Wis. 615; *Ewen v. C. & N. W. R. Co.* 38 Wis. 622, 623; *Regan v. C., M. & St. P. R. Co.* 51 Wis. 600; *Chicago v. Powers*, 42 Ill. 170; *Barley v. C. & A. R. Co.* 4 Biss. 430. These authorities hold that in such a case the jury may take into account the reasonable expectation of pecuniary benefit from the continuance of the life even beyond the minority.

*By the Court.*— The judgment of the circuit court is affirmed.