deavoring to produce a condition which should be satisfactory to the plaintiff, and at the same time to avert any attack upon the descent of the property under the will.   The desire of the executors was to compose all of the matters, and prevent disturbance of the descent.   That was what the parties were met for, and it is highly improbable that plaintiff would not have recollected a conversation so pregnant of results to him if it had taken place, or but that he could have stated positively that it did not take place if such was the *fact.   His recollection upon all other subjects connected with the transaction was clear, and his failure in memory in this respect leads us to the conclusion that plaintiff was not willing to deny what had evidently taken place.   The referee found that this statement was one of the inducing causes which led to the execution of the deed which enlarged his life estate to a fee simple absolute, and, in consequence, plaintiff was estopped from making any claim against his father's estate.   We think the referee was clearly right in this finding, and in his conclusion of law based thereon.   The transaction contained all the essential elements of an estoppel in pais.   The admission was clearly inconsistent with his present attitude and testimony and the claim which he asserts.   The executors acted upon the truth of this admission, and executed the deed; and, if the claim be now allowed, damage will be suffered by a diminution of the estate, and consequent injury to the residuary legatee, Mrs. Ormsby, who executed the deed.   These conditions have uniformly been held sufficient to create an estoppel.   Dezell v. Odell, 3 Hill, 215, dissenting opinion by Bronson, J., approved in Finnegan v. Carraher, 47 N. Y. 493; Trustees v. Smith, 118 N. Y. 634, 23 N. E. 1002; Kingsley v. Vernon, 4 Sandf. 361.   The same doctrine is also recognized and applied in many other cases.   Stillings v. Haggerty (Sup.) 12 N. Y. Supp. 813, affirmed, on appeal, 126 N. Y. 638, 27 N. E. 411; Continental Nat. Bank v. National Bank of the Commonwealth, 50 N. Y. 575.

The judgment appealed from should be affirmed, with costs.   All concur.

---

(6 App. Div. 99.)

### KITCHELL v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   June 2, 1896.)

1. NEGLIGENCE—INJURIES TO CHILDREN.
     Whether a child of seven years old was sui juris is a question for the jury, in an action by the child for personal injuries.

2. SAME—CONTRIBUTORY NEGLIGENCE OF PARENT.
     In an action by a child seven years old against a street-car company for personal injuries, plaintiff's father testified that he was about to cross the track with plaintiff, when he heard a cry from his wife, behind, whereupon he turned back to look after her, leaving the child within a foot of the track; that there were at the time no approaching cars visible on such track; that after he had looked after his wife he turned to go to plaintiff, who in the meantime had gone on the track, and was struck by a car. There was also evidence that the car was moving at the rate of 12 to 15 miles an hour, and that it moved 40 feet after it struck plaintiff, and that no bell was rung or gong sounded as it approached.   It also appeared that

plaintiff was accustomed to being out in the street. *Held*, that whether plaintiff's father was guilty of contributory negligence was a question for the jury.

Appeal from city court of Brooklyn, trial term.

Action by Harriet T. Kitchell, by Edward A. Kitchell, her guardian ad litem, against the Brooklyn Heights Railroad Company, for personal injuries. From a judgment entered on a verdict in favor of plaintiff, defendant appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Morris & Whitehouse, for appellant.
Dailey, Bell & Crane, for respondent.

BARTLETT, J. The plaintiff, at that time a child seven years and one month old, was injured on September 17, 1893, on Myrtle avenue, in the city of Brooklyn, by being struck and knocked down by an electric car, operated by the defendant corporation. She had been a passenger, with her father and mother, on a Green-point car, going toward the city hall. The family lived on the corner of Schenck street and Myrtle avenue, and the car which brought them homeward stopped, in order to allow them to alight, at a point about 50 feet west of Schenck street. The father and the little girl left the car first, and started in a diagonal direction towards their home. This would take them across the other railroad track in Myrtle avenue, along which are run the cars which go eastward from the city hall. The father testifies that, as he approached this track, he looked westward as far as Steuben street, 150 feet distant from where he stood, and saw no car approaching. Just then he heard an outcry from his wife, who was getting out of the car which he and the plaintiff had left; and, apparently feeling some anxiety on his wife's account, he turned back to look after her, leaving the little girl within a foot or eight inches of the east-bound track, continuing on toward his house, at the corner of Schenck street. According to the father's testimony, when he got back to the car, he found his wife getting off, and thereupon started again toward where he had left the plaintiff. As he went back, he says he heard some one shout, "Get out of the way!" and he perceived that the cry proceeded from a car coming up town, on the other track. Meantime the plaintiff, who had evidently gone upon the east-bound track, and then turned to follow her father, was struck by the car on the left side of the head, and otherwise so severely injured, notwithstanding the efforts of her father to assist her, that she subsequently suffered the amputation of her left thumb. There was also proof in behalf of the plaintiff tending to show that the car, at the time of the accident, was moving at the rate of from 12 to 15 miles an hour; that it moved 40 feet after it struck the plaintiff before it stopped; and that no bell was rung or gong sounded as the car approached. There was a verdict for the plaintiff, upon which a judgment was entered, which is now attacked on four grounds: First, because of the alleged

error of the trial judge in not holding, as matter of law, that the plaintiff was sui juris; second, because it is said that, even if the plaintiff was non sui juris, her father was clearly guilty, according to his own testimony, of contributory negligence, which is imputable to the child; third, because the testimony in behalf of the defendant made the negligence of the father still more manifest; and, fourth, because there was no evidence at all of negligence on the part of the defendant.

There is no doubt that the question whether the plaintiff was sui juris or not was properly submitted to the jury.   Stone v. Railroad Co., 115 N. Y. 104, 21 N. E. 712.   In the case cited, the age of the injured child was seven years and three or four months, very nearly the same as that of the plaintiff in this action; and the court of appeals held that the trial judge erred in granting a nonsuit on the ground that the plaintiff was sui juris, saying that the question was one of fact for a jury wherever the inquiry was material, unless the child was of so tender an age that the court could safely decide the fact.

As to the alleged contributory negligence of the father, which the defendant would impute to the plaintiff, we think, also, that there was a question for the jury.   The proof in the case indicates that the street was clear of any vehicles which could have obstructed the father's view as he looked westward along the eastbound track.   If he tells the truth, no car was visible within 150 feet.   The little girl is shown to have been bright and intelligent, and accustomed to being out in the street; and we cannot say that, as matter of law, it was necessarily negligent for her father to leave her to make her way alone across the track, when no car appeared to be approaching, and he was suddenly summoned away, by reason of some anxiety for the safety of his wife, under the circumstances disclosed by the evidence.

Nor can we say that there was not sufficient evidence of the defendant's negligence to go to the jury.   If the jury believed the case as presented in behalf of the plaintiff, they might well find that the accident was due to the high speed of the car, the omission to give timely warning of its approach, and the failure to exercise due watchfulness on the part of the motorman.

Two exceptions to rulings in regard to the admission of testimony are discussed in the brief for the appellant.   A witness for the defendant testified that he saw the car which struck the plaintiff as it approached the Greenpoint car, upon which he was a passenger, and that it was going at a moderate speed, and not as fast as they generally go.   On cross-examination, he was questioned in reference to the speed of the Greenpoint trolley cars generally, and said that he had not ridden on them previous to the day of the accident more than once or twice, and that the experience was a sort of novelty to him.   He said the car he was on "sometimes went pretty lively, and then again it didn't."   He was then asked how fast he supposed it went at the time it went the liveliest, and, after saying that he could not give any idea, he expressed the opinion that it went 10 or 12 miles an hour, at the

fastest. It is argued that the question how fast the Greenpoint car went, which was standing absolutely still at the time of the accident, was wholly immaterial; and in one sense this is true, but the line of inquiry was proper enough, in order to test the trustworthiness of the statement made by the witness on his direct examination, in reference to the speed of the car which caused the accident, and as to which he had said that it was going moderately, and not as fast as cars generally went. The other exception to which attention is called in the brief requires no discussion, inasmuch as the question to which it relates does not appear to have been answered.

The judgment should be affirmed, with costs. All concur.