CITY OF OMAHA V. FANNIE BOWMAN, ADMINISTRATRIX.

FILED DECEMBER 18, 1901. No. 11,958.

Commissioner's opinion, Department No. 2.

1. **Law of the Case.** When this court determines a question of law in a case and remands the case for trial, the rule so determined is the law of the case, and will not ordinarily be reviewed upon a subsequent appeal.

2. ————. Where it has been held on error proceedings in this court that a petition states a good cause of action, evidence sustaining the allegations of such petition is sufficient to support a verdict and judgment in favor of the plaintiff in the action.

3. **Directing Verdict:** INSTRUCTIONS: MEASURE OF DAMAGES. When the trial court instructs the jury to find a verdict for the plaintiff, it is improper to give any further instructions, except as to the measure of damages; but the giving of additional instructions which are not misleading as to the measure of damages will not be held prejudicial to the defendant.

4. **Death of Intestate:** ACTION BY ADMINISTRATRIX: AMOUNT OF RECOVERY. In this action brought by an administratrix for causing the death of her intestate, being her son, seven years of age, a verdict for $1,525 is *held* not excessive so as to require a reversal.

ERROR from the district court for Douglas county. Heard below before BAXTER, J. *Affirmed.*

*W. J. Connell,* for plaintiff in error.

*Silas Cobb, contra.*

Argued orally by counsel for both parties.

Sedgwick, C.

This action was brought by this plaintiff as administratrix of the estate of Albert D. Bowman, deceased, in the district court for Douglas county, to recover damages from the city of Omaha on account of the death of the said Albert D. Bowman by drowning in a pond of water in said city. This is the third time this case has been before this court. When the case was first here (*City of Omaha v. Bowman,* 52 Nebr., 293), the judgment was reversed because the instruction of the trial court "assumed that evidence of such overflow of lots by the massing thereon by a city of the water of a running stream as would entitle the lot owners to damages would be proper proof in support of a claim for compensation for personal injury to one who had no interest in the lot itself." Under the pleadings and evidence, as the case then stood, it appeared that the pond in which the child was drowned was on private property within the limits of the city, but it did not appear that this pond was on, or in dangerous proximity to, a public highway, street or alley; and it was held that in such case the city did not owe any duty to the general public (aside from that of a sanitary character) other than such as devolves on private owners of property similarly situated, even though the city may have created the pond of which the plaintiff complained. After the case had been remanded to the district court, the plaintiff filed an amended petition in which she alleged:"That the city was negligent in allowing the water to accumulate, and be and remain by the side of Davenport street, near Twenty-Eighth street, within the limits of the city, * * * and upon lots 3, 4 and 5, block 3, Drake's addition to the city of Omaha, all fronting upon said Davenport street; * * * that there was at said time no fence around said lots, and no visible boundary line between them and said Davenport street * * * said water being, at the time of said death, over public property of the city, to wit, over a part of the property set apart by said city for sidewalk purposes, and said

water lying at said time in close proximity to said Davenport street at the place where said death occurred"; and that the pond was caused by the city negligently filling with earth Davenport street at a point where a ravine crossed it, without leaving any outlet for the water; that there was no barrier or fence of any sort, or precaution of any kind taken, to protect children lawfully in that vicinity against falling or going into said pond, which was attractive and enticing to children of tender age, many of whom were in the habit of playing in said pond, which was known to the officers and authorities of the city; that deceased was seven years of age, and, while lawfully in vicinity of said pond with other children, yielded to the natural instinct of childhood, "went upon said pond immediately from said Davenport street, where said pond bordered and lay in close proximity to same," and while innocently engaged in playing in and upon said pond of water, on a section of the sidewalk which had been dislodged from its proper place and used as a raft, the child was drowned. To the petition so amended the district court sustained a general demurrer, and the case was brought a second time to this court, and is reported in 59 Nebr., 84. The chief justice, who wrote the opinion of this court, after quoting the above stated amendments to the petition, said: "These averments take the case out of the doctrine announced by this court on the former hearing of the cause." The judgment of the district court was reversed and the cause remanded for a new trial. The third trial in the district court was upon the same pleadings, and at the conclusion of the evidence the court instructed the jury to find a verdict for the plaintiff, and assess such damages as they believed she had suffered, not exceeding $5,000. The jury returned a verdict for $1,525, upon which judgment was entered, and the city brings the case here for review.

1. It is insisted that the evidence does not support the allegations brought into the petition by the amendments referred to. But in this we can not agree with the learned counsel for the city. There is very little substantial

conflict in the evidence. It is not clearly shown how long before the accident occurred the grading on Davenport street was done by the city, but it was not less than two years, and by that grading the accumulation of the water in this pond was caused. The pond of water did not exist before the grading was done. There is no attempt to show that there was any necessity on the part of the city to cause this pond of water, by a proper grading of the street. The boys had been playing at a small pond located in a street which intersects with Davenport street, and went along the walk on Davenport street until they came opposite the pond in question, and then crossing over to the south side of the street to a place where considerable grading had been done by the city to bring the street to the proper level. It does not clearly appear how high this grade was made at this point, but it was at least three or four feet above the level of the water of the pond; and the water extended up on the slope, which was a part of the grade made by the city. That is, the grade of the street was from street line to street line, and the necessary slope to the lower ground was from the top of the grade at the street line to the former level of the ground, so that the water which the city, by its grading of the street, caused to accumulate there, extended up a considerable part of the slope. This slope the city must have put there in making its grade. There was no fence or barrier of any kind between this walk and the pond. It appears from the evidence that the boys went down this slope directly from the sidewalk to the edge of the pond, and, with the help of a pole which they found there, succeeded in reaching a raft which was floating on the water, and, after venturing several times upon this raft, were finally thrown into the water, and the Bowman boy was drowned. It also appears from the evidence that this pond of water at one place extended over the sidewalk not far from the point where the boys crossed the same, and was at that time three or four inches deep over the sidewalk. It also appears that the outlet of the pond was over the street in question, at least,

so that in case of a freshet the water escaped over the street. If it can be said that there was a strip of private land between the street and the pond at the point where the boys went upon the pond, this strip was not more than from four to twelve and one-half feet wide. Several witnesses who saw it at the time of the accident, testified that its width was four feet, and opposed to this testimony we have only the testimony of the engineers, who show, by measurements made several years after the accident took place, that the slope from the top of the grade to the level of the water at that point was about twelve and one-half feet when the water was as high as the level of the street over which it might escape, but do not show any knowledge of the depth of the water in the pond at the time of the accident, nor the portion of this slope that was then covered by the water. This slope, then, between the edge of the grade of the street and the water, which was placed there by the city in making the grade, and which was very steep, is now relied upon by the city as private property separating the pond from the street. There certainly is no ground for such contention. The grade, the slope and the pond were all the work of the city in making the improvement; and the city manifestly can not urge that the pond was on private lands and was not on, or in dangerous proximity to, the street as constructed by the city. We think that all of the allegations brought into the petition by the amendments referred to are fully substantiated by the evidence.

2. It is contended by counsel for the city, in an able argument and an exhaustive review of the authorities, that the holding in this case when it was the second time before this court (*Bowman v. City of Omaha*, 59 Nebr., 84), as well as the rule announced in *City of Omaha v. Richards*, 49 Nebr., 244, is unsound; and counsel urges that we review these cases and the authorities cited, and state "the law applicable to actions of this nature." But this we can not do in this case. The law of this case, upon the question discussed by the learned counsel, has been established by the former holdings

of this court herein. When the case was the second time before this court, the sole question was upon the sufficiency of the petition. As before stated, a general demurrer to the petition had been sustained in the district court, and the question determined by this court was that the allegations of the petition, if sustained by sufficient proof, entitled the plaintiff in this case to recover from the defendant. The defendant's objections to the sufficiency of the petition were then fully investigated; the lower court, applying the law of the case as determined by this court, reached a conclusion in conformity therewith, and without re-examining the grounds upon which the former ruling of this court was based, we are constrained to say that the district court did right in so applying the law of the case as ascertained by this court. When this court determines a question of law in a case, and remands the case for trial, the rule so determined is the law of the case, and will not ordinarily be reversed upon a subsequent appeal. *Barker v. Wheeler,* 60 Nebr., 470; *Wittenberg v. Mollyneaux,* 60 Nebr., 583; *Chicago, B. & Q. R. Co. v. Yost,* 61 Nebr., 530; *Motley v. Motley,* 60 Nebr., 593. "Where it has been held on an error proceeding in this court that a petition states a good cause of action, evidence sustaining the allegations of such petition is sufficient to support a verdict and judgment in favor of the plaintiffs in the action." *Garneau v. Kendall,* 61 Nebr., 396; *Smith v. Neufeld,* 61 Nebr., 699. For the same reason objections to the petition on the ground that it does not contain sufficient allegations of damage to next of kin, nor any allegation that notice of the accident was given, can not now be considered.

3. The trial court, upon directing a verdict for the plaintiff, should have given no other instructions except as to the measure of damages. A statement of the allegations of the pleadings was read to the jury, and a number of instructions upon the law bearing upon defendant's liability were given, some at the request of plaintiff and some at the request of defendant; but we do not see how the defendant was prejudiced thereby, since the jury was told to find a

verdict for plaintiff, which was done, and these instructions contained nothing erroneous or misleading as to the measure of damages.

4. It is complained that the verdict of the jury is excessive. This court in a similar case refused to reverse a judgment for $2,850 as excessive. We think that what was there said is applicable to the case. *City of Omaha v. Richards*, 49 Nebr., 244.

It is therefore recommended that the judgment of the district court be affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.