# RUEHL v. LIDGERWOOD RURAL TELEPHONE COMPANY.

(— L.R.A.(N.S.) —, 135 N. W. 793.)

**Independent contractors — master's responsibility as to necessary precaution.**

1. Where, in the making of an improvement, it is manifest that injury is likely to result unless due precautions are taken, a duty rests upon him who causes the work to be done to see that such necessary precautions are taken.

**Independent contractors — master's duty to see that excavation is guarded.**

2. Where a telephone company contracts with a laborer to dig holes in the dooryard of a house, under a contract to furnish a telephone to the occupant of such house, and into which hole someone else is to place the telephone pole, when the proper time comes, it is a legal duty of such company to properly safeguard such hole, and it is immaterial whether the laborer who digs the same is a servant or an independent contractor.

**Independent contractors — master's liability.**

3. There is a distinction between the liability for injuries resulting from the work which is intrusted to be done, and the liability for injuries occasioned by wrongful and careless acts done in connection with some collateral work or matter.

**Contributory negligence in failing to anticipate negligence of other party.**

4. There is a natural presumption that everyone will act with due care, and it cannot, therefore, be imputed to a plaintiff as contributory negligence that he did not anticipate culpable negligence on the part of the defendant.

---

Note. — The liability of an employer for injuries caused by the performance of work by an independent contractor, which is dangerous unless certain precautions are observed, is the subject of an elaborate note in 65 L.R.A. 833, wherein the general doctrine is stated to be that when a person, through a contractor, does work which from its nature is likely to cause danger to others, there is a duty on his part to take all reasonable precautions against such danger, and that he does not escape from liability for the discharge of the duty by employing the contractor if the latter does not take these precautions.

As to contributory negligence of parent as bar to action by parent or administrator for death of child *non sui juris*, see note in 18 L.R.A.(N.S.) 328, and supplemental note in 38 L.R.A.(N.S.) 754.

As to contributory negligence of child, see notes in 55 Am. Dec. 676, and 57 Am. Rep. 478.

As to doctrine of "attractive nuisance," see notes in 19 L.R.A.(N.S.) 1094, and 20 L.R.A.(N.S.) 903.

**Injury to child — contributory negligence of parent.**

5. It is not contributory negligence as a matter of law, for a mother to allow her children to play in the dooryard while a telephone is being put in the house and the necessary poles are being erected for the purpose. At the most the question is one for the jury, and not for the court.

**Negligent killing of child — damages — necessity of consulting mortality tables.**

6. In a suit under the statute for damages to the parents occasioned by the death by wrongful act of a child of three and one-half years of age, where there is proof that the child, at the time of the accident, was in good health, it is not necessary to a recovery of damages that mortality tables shall be introduced in evidence in order to prove the life expectancy of the deceased. Such tables are admissible both at the common law, and under § 7303, Rev. Code, 1905, but their introduction is not indispensable. The courts also may take judicial notice of such tables and may instruct the jury accordingly.

**Infants — negligence toward, in leaving excavation unguarded.**

7. The question as to whether it was negligence for a telephone company to leave unguarded a telephone pole hole 4½ feet in depth, and 20 inches square, in the dooryard of a farmhouse in which its servant knew that children were playing, is a proper matter for determination by the jury, under all the circumstances of the case.

**Contributory negligence of small child.**

8. A child three and one-half years of age cannot, itself, be charged with contributory negligence.

Opinion filed March 15, 1912.

Appeal from the District Court of Richland county; *Allen,* J.

Action under the statute to recover damages caused by death by wrongful act. Verdict directed in favor of defendant. Plaintiff appeals.

Reversed.

This is an action brought under the statute by Louis Ruehl, the father of, and administrator of the estate of, Louis Ruehl, Jr., deceased, for and on behalf of the father and mother and sisters of the deceased, to recover damages for the death of the said Louis Ruehl, Jr., alleged to have been occasioned by the defendant by carelessly and negligently leaving a telephone post hole "without placing any guards over or above the same, and without taking any precaution of any kind to

avoid" the accident. The evidence is to the effect that on or about
the 1st day of April, 1910, one L. J. Christenson was president and
manager of the defendant telephone company; that about such time
the company arranged to extend its line past the house of the plaintiff
and to put a telephone therein; that the dwelling house of the plaintiff
stood about 4 rods from the east end of the section line, on which was laid
out a traveled highway; that before the holes in which the telephone
poles were to be set were dug, defendant telephone company had caused
the necessary poles to be hauled and placed along the route of the pro-
posed extension, at about the places where the same were to be set, and
had caused the places where it was proposed to have the holes dug
marked or designated by sticks or broken lath; that on or about the
1st day of April, 1910, Christenson, on behalf of the telephone com-
pany, employed one Frank Zimmerman to dig a line of post holes along
the said extension, and agreed to pay him 12½ cents for each hole; that
Christenson told said Zimmerman what to do, and supplied him with
the tools, and told him how to do the work; that the post holes were to
be 4½ feet deep, and that this depth was directed by Christenson; that
the spade used by Zimmerman was given to him by Shulke, the em-
ployee of the company who marked the holes; that the arrangement was
that Zimmerman should dig a line of holes from Lidgerwood out about
2 miles, and the line of poles ran down alongside the highway for about
a mile; that he commenced digging at the city limits and worked due
east a mile, and in the evening had to go home, so took his tools over to
Ruehl's house and went, horseback, to town, and started at Ruehl's
place and worked towards town. Then, after finishing up that mile, he
commenced next morning at Ruehl's house and worked back and met
the holes dug before; that the whole job was about 2½ miles long;
that his arrangement with Christenson was that he should dig that line
of holes, and should be paid therefor at the rate of 12½ cents per hole, to
be paid when the job was finished and accepted by the company; that
at the time of the accident, plaintiff's family consisted of himself, his
wife, and five children, the oldest child being at the time ten years of age,
and the youngest about one year; that the deceased child was aged three
years and five months; that on the day of the accident the weather was
warm, and plaintiff's children were playing about the house and in the
dooryard; that on the said day Frank Zimmerman dug a hole in which

to insert one of the telephone poles about 4 rods directly east from the plaintiff's house, and on or near the west edge of the said public highway; that the hole was partly in the highway and partly to the west, on plaintiff's land; that it was about 4½ feet deep and 20 inches across; that when completed this hole was left uncovered and unguarded; that Zimmerman finished this hole about a quarter after eight in the morning; that he saw the children about ten minutes before he completed it; that when he had completed the hole he proceeded to dig another one about 10 rods from the first one; that they were with him when he dug the third hole, the second one from the one in question; that after he finished, they walked with him a ways; that he did not put anything over the holes, or guard them in any way; that about ten or fifteen minutes before the child was found in the hole, the children were with Zimmerman, and about three-quarters of an hour from the time that he finished digging the first hole; that the plaintiff talked to Zimmerman two or three minutes while he was digging the first hole, and left when he had the hole about half done; that he then went into the field to work; that when he left, Zimmerman was still digging at the first hole; that when he left for the fields, the children were all at home; that he thought they were in the house; that he did not see them in the yard; that Zimmerman did not say anything about covering the hole; that he (Ruehl) did not think or say anything about covering the hole; that the child was a bright, good and healthy boy, and was his only son, and had never been sick. Mrs. Ruehl was working in the house. She saw Zimmerman digging the hole. She knew that the telephone company was about to extend its line to the house. She did not know how deep the hole was going to be dug; nobody had told her anything about it. She did not miss her children at any time. She could hear them talking in the yard, and supposed they were all right. About an hour after the first hole had been dug, the deceased, Louis Ruehl, Jr., fell into the first hole head first, and was either drowned or smothered in the mud.

After the close of plaintiff's testimony, the defendant moved for a directed verdict on the grounds: (1) That there was no actionable negligence on the part of the defendant; (2) contributory negligence on the part of the parents of the deceased child; (3) that the hole in which the child lost its life was not dug by a servant of the defendant,

but by an independent contractor. This motion was granted, and from the judgment dismissing the action this appeal is taken.

*W. S. Lander,* for appellant.

Zimmerman was simply the servant of defendant, and nothing more; there was no question even to go to the jury as to his being an independent contractor. Wood, Mast. & S. § 1, p. 2; 26 Cyc. pp. 699, 1546; Waggener v. Haskell, 89 Tex. 435, 35 S. W. 1; Jensen v. Barbour, 15 Mont. 582, 39 Pac. 906; Holmes v. Tennessee Coal, Iron & R. Co. 49 La. Ann. 1465, 22 So. 403; Waters v. Pioneer Fuel Co. 52 Minn. 474, 38 Am. St. Rep. 564, 55 N. W. 52; O'Neill ,v. Blase, 94 Mo. App. 648, 68 S. W. 764; Fink v. Missouri Furnace Co. 10 Mo. App. 61; Sadler v. Henlock, 3 C. L. R. 760, 4 El. & Bl. 570, 24 L. J. Q. B. N. S. 138, 1 Jur. N. S. 677, 3 Week. Rep. 181; Turner v. Great Eastern R. Co. 33 L. T. N. S. 431; Texas & P. R. Co. v. Juneman, 18 C. C. A. 394, 30 U. S. App. 541, 71 Fed. 936; Singer Mfg. Co. v. Rahn, 132 U. S. 518, 33 L. ed. 440, 10 Sup. Ct. Rep. 175; Stone v. Codman, 15 Pick. 297; State, Redstrake, Prosecutor, v. Swayze, 52 N. J. L. 129, 18 Atl. 697; Lancaster Ave. Improv. Co. v. Rhoads, 116 Pa. 377, 2 Am. St. Rep. 608, 9 Atl. 852; Lewis v. Detroit Vitrified Brick Co. 164 Mich. 489, 129 N. W. 726; Larson v. Home Teleph. Co. 164 Mich. 295, 129 N. W. 894; Barg v. Bousfield, 65 Minn. 355, 68 N. W. 45, 16 Am. Neg. Cas. 188; Tiffin v. McCormack, 34 Ohio St. 638, 32 Am. Rep. 408, 2 Mor. Min. Rep. 194; Brackett v. Lubke, 4 Allen, 138, 81 Am. Dec. 694; Atlantic Transport Co. v. Coneys, 28 C. C. A. 388, 51 U. S. App. 570, 82 Fed 177; Campbell v. Lunsford, 83 Ala. 512, 3 So. 522, 13 Am. Neg. Cas. 164; Giacomini v. Pacific Lumber Co. 5 Cal. App. 218, 89 Pac. 1059; Linnehan v. Rollins, 137 Mass. 123, 50 Am. Rep. 287; DePalma v. Weinman, 15 N. M. 68, 24 L.R.A.(N.S.) 423, 103 Pac. 782; Goldman v. Mason, 18 N. Y. S. R. 376, 2 N. Y. Supp. 337; Pickens v. Diecker, 21 Ohio St. 212, 8 Am. Rep. 55; Smith v. Humphreyville, 47 Tex. Civ. App. 140, 104 S. W. 495; Shearm. & Redf. Neg. §§ 76–79; Southern Cotton Oil Co. v. Wallace, — Tex. Civ. App. —, 54 S. W. 738; Indiana Iron Co. v. Cray, 19 Ind. App. 565, 48 N. E. 803; Brophy v. Bartlett, 1 Silv. Ct. App. 575; Barclay v. Puget Sound Lumber Co. 48 Wash. 241, 16 L.R.A. (N.S.) 140, 93 Pac. 430; Nyback v. Champagne Lumber Co. 48 C. C.

A. 632, 109 Fed. 732; St. Clair Nail Co. v. Smith, 43 Ill. App. 105; Drennen v. Smith, 115 Ala. 396, 22 So. 442; Scott v. Springfield, 81 Mo. App. 312; Speed v. Atlantic & P. R. Co. 71 Mo. 303; Stevens v. Gourley, 14 Moore P. C. C. 92; Steger v. Barrett, — Tex. Civ. App. —, 124 S. W. 174; Mullich v. Brocker, 119 Mo. App. 332, 97 S. W. 549; Andrews Bros. Co. v. Burns, 22 Ohio C. C. 437, 12 Ohio C. D. 305; Anderson v. Moore, 108 Ill. App. 106; Rait v. New England Furniture & Carpet Co. 66 Minn. 76, 68 N. W. 799; Ballard & B. Co. v. Lee, 131 Ky. 412, 115 S. W. 732; Isnard v. Edgar Zinc Co. 81 Kan. 765, 106 Pac. 1003; Missouri, K. & T. R. Co. v. Romans, — Tex. Civ. App. —, 114 S. W. 157; Pearson v. M. M. Potter Co. 10 Cal. App. 245, 101 Pac. 681; Neimeyer v. Weyerhaueser, 95 Iowa, 497, 64 N. W. 416.

Where, in the making of an improvement of any kind, it is manifest that injury is likely to result unless due precautions are taken, duty rests upon the employer to see to it that all necessary precautions are taken. A neglect of this duty will render the employer liable. 26 Cyc. 1560 and note 95, and cases cited; Thompson v. Lowell, L. & H. Street R. Co. 170 Mass. 577, 40 L.R.A. 345, 64 Am. St. Rep. 323, 49 N. E. 913; Davis v. Summerfield, 133 N. C. 325, 63 L.R.A. 492, 45 S. E. 654; Wolf v. Third Ave. R. Co. 67 App. Div. 605, 74 N. Y. Supp. 336; Denison, B. & N. O. R. Co. v. Barry, — Tex. Civ. App. —, 80 S. W. 634, 98 Tex. 248, 83 S. W. 5; Wetherbee v. Partridge, 175 Mass. 185, 78 Am. St. Rep. 486, 55 N. E. 894; Thomas v. Harrington, 72 N. H. 75, 65 L.R.A. 742, 54 Atl. 285; Mullins v. Siegel-Cooper Co. 183 N. Y. 129, 75 N. E. 1112; Downey v. Low, 22 App. Div. 460, 48 N. Y. Supp. 207; Wile v. Los Angeles Ice & Cold Storage Co. 2 Cal. App. 190, 83 Pac. 271; Keyes v. Second Baptist Church, 99 Me. 308, 59 Atl. 446; Wiggin v. St. Louis, 135 Mo. 558, 37 S. W. 528; Murphy v. Perlstein, 73 App. Div. 256, 76 N. Y. Supp. 657; Ann v. Herter, 79 App. Div. 6, 79 N. Y. Supp. 825; Loth v. Columbia Theater Co. 197 Mo. 328, 94 S. W. 847; Southern Ohio R. Co. v. Morey, 47 Ohio St. 207, 7 L.R.A. 701, 24 N. E. 269; Palmer v. Lincoln, 5 Neb. 136, 25 Am. Rep. 470; Robbins v. Chicago, 4 Wall. 679, 18 L. ed. 432; Omaha v. Jensen, 35 Neb. 68, 37 Am. St. Rep. 432, 52 N. W. 833; McCarrier v. Hollister, 15 S. D. 366, 91 Am. St. Rep. 695, 89 N. W. 862; Donovan v. Oakland & B. Rapid Transfer Co. 102 Cal. 245, 36 Pac.

516; Savannah v. Waldner, 49 Ga. 316; Joliet v. Harwood, 86 Ill. 110, 29 Am. Rep. 17; Dooley v. Sullivan, 112 Ind. 451, 2 Am. St. Rep. 209, 14 N. E. 566; Bonaparte v. Wiseman, 86 Md. 12, 44 L.R.A. 482, 42 Atl. 918; Stewart v. Putnam, 127 Mass. 403; Pye v. Faxon, 156 Mass. 471, 31 N. E. 640; Gorham v. Gross, 125 Mass. 232, 28 Am. Rep. 224; Woodman v. Metropolitan R. Co. 149 Mass. 340, 4 L.R.A. 213, 14 Am. St. Rep. 427, 21 N. E. 482, 12 Am. Neg. Cas. 80; Dillon v. Hunt, 105 Mo. 154, 24 Am. St. Rep. 374, 16 S. W. 516; Johnston v. Phœnix Bridge Co. 44 App. Div. 581, 60 N. Y. Supp. 947; Covington & C. Bridge Co. v. Steinbrock, 61 Ohio St. 215, 55 N. E. 618, 76 Am. St. Rep. 375, and elaborate note; Houston v. Isaacks, 68 Tex. 116, 3 S. W. 693; Wilber v. Follansbee, 97 Wis. 577, 72 N. W. 741, 73 N. W. 559; Chicago Economic Fuel Gas Co. v. Myers, 168 Ill. 139, 48 N. E. 66; Bower v. Peate, L. R. 1 Q. B. Div. 321, 45 L. J. Q. B. 446, 35 L. T. N. S. 321; Adams Exp. Co. v. Schofield, 111 Ky. 832, 64 S. W. 93; Reuben v. Swigart, 15 Ohio C. C. 565, 7 Ohio C. D. 638; Cameron Mill & Elevator Co. v. Anderson, 98 Tex. 156, 1 L.R.A.(N.S.) 198, 81 S. W. 282.

The question as to whether, under the evidence, as matter of law, the parents of the deceased child were guilty of such contributory negligence as precluded a recovery was a question for the jury, and nothing more. Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, and cases cited at page 377, 121 N. W. 830; Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 390; Herbert v. Northern P. R. Co. 3 Dak. 38, 13 N. W. 349; Mares v. Northern P. R. Co. 3 Dak. 336, 21 N. W. 5; Elliot v. Chicago, M. & St. P. R. Co. 5 Dak. 523, 3 L.R.A. 363, 41 N. W. 758.

*Purcell & Divet, George W. Freerks,* and *P. L. Keating,* for respondent.

Zimmerman was an independent contractor, and the relation of master and servant did not exist between him and the defendant. Solberg v. Schlosser, 20 N. D. 307, 30 L.R.A.(N.S.) 1111, 127 N. W. 91; Gay v. Roanoke R. & Lumber Co. 148 N. C. 336, 62 S. E. 436; Patton-Worsham Drug Co. v. Drennon, — Tex. Civ. App. —, 123 S. W. 705; McCarthy v. Portland, 71 Me. 318, 36 Am. Rep. 320; Keyes v. Second Baptist Church, 99 Me. 308, 59 Atl. 446; Kampman v. Rothwell, — Tex. Civ. App. —, 107 S. W. 120; 2 Thomp.

Neg. § 22, p. 809; Atlantic Transport Co. v. Coneys, 51 U. S. App. 570, 82 Fed. 177, and instructive note at the end of this case in 28 C. C. A. pp. 392–399; Giacomini v. Pacific Lumber Co. 5 Cal. App. 218, 89 Pac. 1059; Linnehan v. Rollins, 137 Mass. 123, 50 Am. Rep. 287; Goldman v. Mason, 18 N. Y. S. R. 376, 2 N. Y. Supp. 337; Pickens v. Diecker, 21 Ohio St. 212, 8 Am. Rep. 55; Kniceley v. West Virginia Midland R. Co. 64 W. Va. 278, 17 L.R.A.(N.S.) 370, 61 S. E. 811; Penny v. Wimbledon Urban Dist. Council [1898] 2 Q. B. 212, 67 L. J. Q. B. N. S. 754, 62 J. P. 582, 78 L. T. N. S. 748, 14 Times L. R. 477; St. Louis & S. F. R. Co. v. Madden, 77 Kan. 80, 17 L.R.A.(N.S.) 788, 93 Pac. 586; Arasmith v. Temple, 11 Ill. App. 39; Eldred v. Mackie, 178 Mass. 1, 59 N. E. 673; Houghton v. Loma Prieta Lumber Co. 152 Cal. 574, 93 Pac. 377; Louisville & N. R. Co. v. Hughes, 134 Ga. 75, 67 S. E. 542; Singer Mfg. Co. v. Rahn, 132 U. S. 518, 33 L. ed. 440, 10 Sup. Ct. Rep. 175; Casement v. Brown, 148 U. S. 615, 37 L. ed. 582, 13 Sup. Ct. Rep. 672; Carlson v. Stocking, 91 Wis. 432, 65 N. W. 58; McColligan v. Pennsylvania R. Co. 214 Pa. 229, 6 L.R.A.(N.S.) 544, 112 Am. St. Rep. 739, 63 Atl. 792; MacDonald v. O'Reilly, 45 Or. 589, 78 Pac. 753; Midgette v. Branning Mfg. Co. 150 N. C. 333, 64 S. E. 5; Finkelstein v. Balkin, 103 N. Y. Supp. 99; Omaha Bridge, & Terminal R. Co. v. Hargadine, 5 Neb. (Unof.) 418, 98 N. W. 1071, 76 Neb. 729, 107 N. W. 864; Hawver v. Whalen, 49 Ohio St. 69, 14 L.R.A. 828, 29 N. E. 1049; Poor v. Madison River Power Co. 38 Mont. 341, 99 Pac. 947; McGrath v. St. Louis & H. Constr. Co. 215 Mo. 191, 114 S. W. 611; Brackett v. Lubke, 4 Allen, 138, 81 Am. Dec. 694; Smith v. Benick, 87 Md. 610, 42 L.R.A. 277, 41 Atl. 277.

Contributory negligence of the plaintiff, administrator, or other beneficiaries is a good defense. Scherer v. Schlaberg, 18 N. D. 421, 24 L.R.A.(N.S.) 520, 122 N. W. 1000.

BRUCE, J. (after stating the facts as above). The first question to be determined is whether the defendant at the time of the accident was acting through a servant, or by means of an independent contractor. On this point John L. Matthews, the vice president of the company, testifies that Mr. Christenson was the vice president and had charge of and was a general manager of the construction work; that the company

employed Shulke to mark the places where the holes were to be dug; that no one was employed by the company to dig them. Frank Zimmerman, on the other hand, testifies that "Christenson employed me to dig that hole. I spoke for the job, and he offered me so much a hole, and I did that. Christenson offered me so much a hole, and I accepted the proposition on certain terms. He paid me 12½ cents for each hole. I worked for the telephone company off and on all summer. My directions were that the holes should be 4½ feet. I asked Christenson, and that is what he told me the depth was. I put no guard around the first hole I dug. I made arrangements with Christenson. The arrangement was that I should dig the line of holes from Lidgerwood out to the place, about 2 miles, and that line of holes ran down along the side of the railway for about a mile. My arrangement with Christenson was that I should dig that line of holes and should be paid at the rate of 12½ cents per hole, to be paid for when the job was finished and accepted by the company, and under that arrangement I went ahead and did the work. Q. The tools used in digging the hole belonged to the telephone company? By the court: Do you know that they belonged to the telephone company, or do you merely mean that they were given you by Christenson? A. Why, they were not just exactly given me by Christenson. The tools were given me by Shulke. I don't know who owned them. I had a talk with Christenson at the time I made the arrangement to dig these holes, at the time Christenson supplied me with these tools. I had nothing to do with the marking the place where these holes were to be dug. I was told to dig the holes where I found the stakes. Christenson told me that he would send Shulke out and mark the holes, and to dig them where the stakes were."

The defendant cannot, under these facts, escape liability on the theory that Zimmerman was an independent contractor. There is much confusion in the authorities as to what is and what is not an independent contract. Some hold that the service must be rendered in the course of an independent occupation, and that the work done must be done by one whose independent business it is to do it. Judge Cooley, for instance, defines the term "independent contracts" as follows: "Persons following a regular, independent employment, in the course of which they offer their services to the public to accept orders and execute commissions for all who may employ them, in a certain line of duty,

using their own means for the purpose and being accountable only for final performance." Cooley, Torts, p. 549. Other authorities make the distinction depend solely upon whether, in the transaction of the business, the workman is subject to the orders of his patron, both as to the manner of doing and the result of his work. Singer Mfg. Co. v. Rahn, 132 U. S. 518, 33 L. ed. 440, 10 Sup. Ct. Rep. 175. Nearly all of the writers, however, agree that where a person or corporation undertakes to do work upon the premises of the owner or of him who is in possession, and such first person intrusts the performance of the work to a contractor or workman, but does not, and is not authorized by the one in possession to, give the control of the premises to the workman or contractor, such workman or contractor will be looked upon as a servant of the first party, and not as an independent contractor. In other words, the courts are inclined to hold, and we hold in this case, that when the telephone company undertook to put the telephone in the house of Louis Ruehl, it impliedly agreed to put it in in a safe and proper manner, and not in a manner which would endanger the lives of the plaintiff and of his family. Anderson v. Moore, 108 Ill. App. 106; Perry v. Ford, 17 Mo. App. 213; Waters v. Pioneer Fuel Co. 52 Minn. 474, 38 Am. St. Rep. 564, 55 N. W. 52. There is much in this case which would lead us to hold that in no sense could the witness Zimmerman be held to be an independent contractor, and the general rule is that the burden of proof in such matters is upon him who alleges the fact. Midgette v. Branning Mfg. Co. 150 N. C. 333, 64 S. E. 5. Zimmerman testifies that he was in the employ of the defendant all summer, and that he did not furnish his own tools. A person is not an independent contractor merely because he is paid by the piece or by the job. Foster v. National Steel Co. 216 Pa. 279, 65 Atl. 618; Waters v. Pioneer Fuel Co. 52 Minn. 474, 38 Am. St. Rep. 564, 55 N. W. 52; Holmes v. Tennessee Coal, I. & R. Co. 49 La. Ann. 1465, 22 So. 403. Nor does the fact that Zimmerman was not to be paid until the job was satisfactorily completed alter the case. This would merely be evidence of the fact that the method of work was subject to the approval of the company. It is a provision which is implied in all contracts of employment. No laborer can recover his daily wage unless he can show that he has earned it. Even if Zimmerman could be considered as an independent contractor in relation to the

digging of the hole, he was not an independent contractor in relation to the whole of the work, which was the digging of the holes and the placing of the posts therein. His work was but a part of a series of work. The posts were on the ground to be put in by some one else. All that we learn of his contract was that he should dig the post holes. If the contract presupposed this and this alone, it would presuppose the construction of dangerous pitfalls, and the principal would be liable for them the same as if he had authorized an independent contractor to construct a wall or a building according to specifications which were inherently dangerous, and which resulted in the falling of such wall. The rule seems to be well established that where, in the making of an improvement of any kind, it is manifest that injury is likely to result unless due precautions are taken, a duty rests upon him who causes the work to be done to see that all necessary precautions are taken. See 26 Cyc. p. 1560, and numerous cases there cited. According to the evidence the contract was merely to dig the holes into which someone else was to place the posts when the proper time came. It is really immaterial, in this view of the case, whether Zimmerman was an independent contractor or not. It was the legal duty of the defendant to properly safeguard the holes. There is no evidence that the defendant transferred this duty to another. We are in serious doubt as to whether it could. Bower v. Peate, L. R. 1 Q. B. Div. 321, 45 L. J. Q. B. N. S. 446, 35 L. T. N. S. 321; Hughes v. Percival, L. R. 8 App. Cas. 443, 52 L. J. Q. B. N. S. 719, 49 L. T. N. S. 189, 31 Week. Rep. 725, 47 J. P. 772. We consider the reasoning of the case of Donovan v. Oakland & B. Rapid Transit Co. 102 Cal. 245, 36 Pac. 516, as entirely applicable in the case at bar, and we adopt it as our own. See also Homan v. Stanley, 66 Pa. 464, 5 Am. Rep. 389. There is a distinction between injuries resulting from the work itself and where the wrongful or careless act is in connection with some collateral work or matter. A distinction is made, indeed, between a contract whereby the independent contractor is required to dig a deep pit or well, and a third person is injured by falling into that well, and a case where a contractor is authorized to build a house, which in itself is not dangerous, but while building it he drops a plank upon the head of a passer-by. In one case the injury is occasioned by the subject of the contract itself, or the thing constructed under the contract. In the other it is occasioned

by an act collateral to the construction. Davie v. Levy, 39 La. Ann. 551, 4 Am. St. Rep. 225, 2 So. 395.

We are unable to find, as a matter of law, that the father was guilty of contributory negligence in this case. It is true that before going to work in the fields he talked with Zimmerman, who was digging the first hole, and that he testifies that at the time "he did not think anything about covering the hole," and that respondent's counsel not only seeks to argue contributory negligence therefrom, but a lack of negligence on the part of the defendant. "Why, then" he asks, "should Zimmerman think of it?" The conclusion he contends for, however, by no means follows. Plaintiff had the right to assume that in digging the holes in question Zimmerman would proceed with due care, and at the time he left for the fields Zimmerman was in complete control, and the hole was not even fully dug. "As there is a natural presumption that everyone will act with due care, it cannot be imputed to the plaintiff as negligence that he did not anticipate culpable negligence on the part of the defendant." 1 Shearm. & Redf. Neg. 4th ed. § 92 and cases cited. The duty to properly guard the holes was upon the defendant, and not upon the plaintiff.

Nor do we believe that it was contributory negligence, as a matter of law, on the part of the mother to allow the child to play in the yard. In considering such matters, by far the greater number of the courts have borne in mind the fact that "men must work;" that seed must be sown and housework done; that the hard-working mother of a family has many duties, and that the provider of bread must give a more or less uninterrupted attention to his labors; that it is only the few who have the means to employ a retinue of servants. At the most, and according to the great weight of authority, the question of contributory negligence was one for the jury, and not for the court. Garner v. Trumbull, 36 C. C. A. 361, 94 Fed. 321; Mellen v. Old Colony Street R. Co. 184 Mass. 399, 68 N. E. 679; Hewitt v. Taunton Street R. Co. 167 Mass. 483, 46 N. E. 106; Howell v. Rochester R. Co. 24 App. Div. 502, 49 N. Y. Supp. 17; Ehrmann v. Nassau Electric R. Co. 23 App. Div. 21, 48 N. Y. Supp. 379; Muller v. Brooklyn Heights R. Co. 18 App. Div. 177, 45 N. Y. Supp. 954; Kitchell v. Brooklyn Heights R. Co. 6 App. Div. 99, 39 N. Y. Supp. 743; Jones v. Brooklyn Heights

23 N. D.—2.

R. Co. 10 Misc. 543, 31 N. Y. Supp. 445; Karahuta v. Schuylkill Traction Co. 6 Pa. Super. Ct. 319.

It is, of course, well established that a child of three and a half years of age cannot itself be made chargeable with contributory negligence. Rice v. Crescent City R. Co. 51 La. Ann. 108, 24 So. 791; Barnes v. Shreveport City R. Co. 47 La. Ann. 1218, 49 Am. St. Rep. 400, 17 So. 782; Pueblo Electric Street R. Co. v. Sherman, 25 Colo. 114, 71 Am. St. Rep. 116, 53 Pac. 322. Even the most rigid rule would make the question one for the jury. Young v. Atlantic Ave. R. Co. 10 Misc. 541, 31 N. Y. Supp. 441.

But respondent's counsel contends that the judgment should be affirmed because the plaintiff failed to introduce any mortality tables in evidence, or in any way to prove the life expectancy of the deceased child. He claims that on this account the jury could only have found a verdict for nominal damages, and that where only nominal damages could be recovered the doctrine of *de minimis non curat lex* applies, and appellate courts will not reverse judgments for the defendant when a new trial would only result in nominal damages for the plaintiff. Appellant answers this contention chiefly by stating that the matter was not brought to the attention of the court below, and the failure to prove damages was not urged as a reason for the motion for a directed verdict. Both counsel are partially mistaken. The fact as to whether the matter was brought to the attention of the trial court at the time of the motion for a directed verdict is of no moment, and the rule is well established that except in the case of what may be called "hard actions," and actions which involve title to land, or other than merely money rights, the appellate court will not reverse a judgment for the defendant when a new trial would merely result in the awarding of nominal damages. Raymond v. Edelbrock, 15 N. D. 231, 107 N. W. 194. The respondent, on the other hand, is mistaken in his assumption that it was necessary for the plaintiff to introduce mortality tables in evidence, and that the plaintiff failed to introduce evidence from which the value of the loss of the services and earnings of the deceased might be inferred. He proved the age of the child, and that the child was in good health. There was also evidence enough in the record for the jury to form a fair estimate of the business and occupation, and the circumstances of the father. On these facts the jury could base their

conclusions. After a very exhaustive examination of the cases and authorities, we fail to find a single authority which makes the introduction of such tables a prerequisite to a recovery of damages. Such tables, it is true, are admissible in evidence, and our statute, § 7303, Rev. Codes 1905, makes the so-called "Carlisle Tables" admissible. But nowhere do we find authority for the proposition that their introduction is absolutely necessary. In fact, the overwhelming weight of authority is to the effect that the court will take judicial notice of the standard tables, and if called upon, or even if not called upon, may instruct the jury in relation thereto. It would have been perfectly competent, in the case at bar, for the court to have instructed the jury as to the fact of the contents of such mortality tables; and the request for this instruction, of course, was not required to be made prior to or at the time of the motion for the directed verdict. Kansas City, M. & B. R. Co. v. Phillips, 98 Ala. 159, 13 So. 65; Louisville & N. R. Co. v. Mothershead, 97 Ala. 261, 12 So. 714; McDonnell v. Alabama Gold L. Ins. Co. 85 Ala. 401, 5 So. 120; Arkansas Midland R. Co. v. Griffith, 63 Ark. 491, 39 S. W. 550; Nelson v. Branford Lighting & Water Co. 75 Conn. 548, 54 Atl. 303; 1 Greenl. Ev. 16th ed. § 6e; 17 Am. & Eng. Enc. Law, 2d ed. 900; Indianapolis v. Marold, 25 Ind. App. 428, 58 N. E. 512; Louisville, N. A. & C. R. Co. v. Miller, 141 Ind. 533, 37 N. E. 343; Shover v. Myrick, 4 Ind. App. 7, 30 N. E. 207; Alexander v. Bradley; 3 Bush, 667; Boettger v. Scherpe & K. Architectural Iron Co. 136 Mo. 531, 38 S. W. 298; Davis v. Standish, 26 Hun, 608; Abell v. Penn Mut. L. Ins. Co. 18 W. Va. 400; Abbott, Trial Ev. p. 729, note 4; Scheffler v. Minneapolis & St. L. R. Co. 32 Minn. 518, 21 N. W. 711. Anything that the court may take judicial notice of must be something which, from its nature, is or should be known to all men of ordinary understanding and intelligence, and such men the jury must be deemed to have been.

In the following cases damages running all the way from $1,000 to $7,500 were awarded by the juries, and sustained by the courts, even though there was an entire absence of mortality tables, or even of an instruction upon the subject. Myers v. San Francisco, 42 Cal. 215; Chicago & E. R. Co. v. Branyan, 10 Ind. App. 570, 37 N. E. 190; Eginoire v. Union County, 112 Iowa, 558, 84 N. W. 758; Union P. R. Co. v. Dunden, 37 Kan. 1, 14 Pac. 501; Franke v. St. Louis, 110

Mo. 516, 19 S. W. 938; Omaha v. Bowman, 63 Neb. 333, 88 N. W.
521; Morris v. Metropolitan Street R. Co. 170 N. Y. 592, 63 N. E.
1119; Hoon v. Beaver Valley Traction Co. 204 Pa. 369, 54 Atl. 270;
Southern Queen Mfg. Co. v. Morris, 105 Tenn. 654, 58 S. W. 651;
Johnson v. Chicago & N. W. R. Co. 64 Wis. 425, 25 N. W. 223;
Kansas P. R. Co. v. Cutter, 19 Kan. 91; Chicago & A. R. Co. v. Beck-
er, 84 Ill. 483; Louisville & N. R. Co. v. Connor, 9 Heisk. 20; Old-
field v. New York & H. R. Co. 3 E. D. Smith, 103; McGovern v.
New York C. & H. R. R. Co. 67 N. Y. 417.

On the main question as to whether the jury could infer negligence,
from the leaving of the post holes unprotected, we hold that it could.
The first hole was completed at least three quarters of an hour before
the time of the accident.  Zimmerman knew that children were playing
or liable to play in the yard.  This they had a perfect right to do.  The
question, in the main, is one for the jury, and not one for the court.

The judgment of the District Court is reversed, a new trial granted,
and the cause remanded for further proceedings according to law.